# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>MORRIS CERULLO,<br><br>　　　　　　　　　　　Defendant. | Criminal Case No. 05cr1190 BEN<br><br>SECOND AMENDED ORDER GRANTING MOTION TO RECONSIDER AND GRANTING MOTION TO DISMISS INDICTMENT |

　　　　The Government's Motion to Amend the Order Dismissing the Indictment is granted. The amended Order is as follows.

　　　　Now before the Court is Defendant's Motion for Reconsideration of the Court's Denial of the Motion to Dismiss the Indictment for Grand Jury Abuse. The Government is represented by the Office of the U.S. Attorney. Defendant is represented by Gregory A. Vega, Esq, former U.S. Attorney.

　　　　The Court grants the motion to reconsider and having reconsidered, finds that there was prosecutorial error during the grand jury proceedings such that this Court is left with grave doubt that the decision to indict Defendant for the crime of filing a false tax return (in violation of 26 U.S.C. § 7206(1)) was free from the substantial influence of the violations and this Court finds that

Defendant is substantially prejudiced as a result.[1]  *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).

A federal grand jury serves to independently decide which cases should be prosecuted and in the process acts as a buffer to protect citizens against unfair charges.  Put differently, the Ninth Circuit has observed that "the United States Supreme Court has steadfastly insisted that the grand jury remains as a shield against unfounded prosecutions."  *United States v. Navarro-Vargas*, 408 F.3d 1184, 1196 (9th Cir. 2005) (en banc) (citations omitted).  In the process of bringing cases to the grand jury for evaluation, the prosecutor need not present his or her best evidence and the prosecutor need not present exculpatory evidence.  *United States v. Williams*, 504 U.S. 36, 55 (1992).  Many forms of prosecutorial error do not warrant dismissal of the resulting indictment. *Bank of Nova Scotia*, 487 U.S. at 257-264.  Only when the prosecutorial error undermines the independence of the grand jury and only when the effect of the prosecutorial error visits prejudice upon an accused, will the Court take the extraordinary step of dismissing an indictment.  This is such a case.

Here the Defendant is a religious minister.  He stands accused of failing to report to the Internal Revenue Service all of his income earned and received as a result of speaking at churches.  The prosecutor takes the position that all the money received by Defendant after delivering a speech or sermon is "earned income" received in exchange for services rendered and should have been reported on his tax returns.  The prosecutor's position admits no possibility that some or all of the money received by Defendant could be a gift and thus, not reportable as earned income.  The Internal Revenue Code does not define a gift and offers little guidance for correctly characterizing such money received by a religious minister as either reportable earned income or excludable property acquired by gift.

However, the United States Supreme Court addressed the issue 47 years ago in *Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278 (1960), and that decision remains

---

[1] Defendant alleged a number of other violations of Rule 6 of the Federal Rules of Criminal Procedure.  Other than the misleading of the grand jury described below, none prejudiced the Defendant sufficiently to warrant dismissal of the indictment.

1  the definitive authority on how to untangle the income/gift dichotomy.[2]  *Duberstein* instructs that
2  the "[d]ecision of the issue presented in these cases must be based ultimately on the application of
3  the factfinding tribunal's experience with the mainsprings of human conduct to the totality of the
4  facts in each case." *Id.* at 289.  Significantly, *Duberstein* points out that the most important factor
5  among the totality of the facts is the donor's intent.  According to the Court, "what controls is the
6  intention with which payment, however voluntary, has been made." *Id.* at 286 (citation omitted).
7  "[T]he most critical consideration. . .is the transferor's 'intention.'" *Id.* at 285.

8        The prosecutor's conduct before the grand jury in Cerullo's case, when measured against
9  this standard, fell to a level that misled the grand jury on this most critical issue.  During the
10 prosecutor's presentation, the grand jury asked at least three times about how to differentiate
11 between earned income and gifts.  Each time the prosecutor answered without mentioning the most
12 critical factor: the donor's intent.  And each time he told the grand jury to listen to the testimony of
13 the Internal Revenue Service Agent.  The revenue agent also answered the question.

14       During the testimony of one revenue agent, the grand jury asked, "So if I attend a sermon
15 as a parishioner, they take up a collection which is handling the honorarium, I come up to the
16 minister later and say, I really enjoyed your lecture, your sermon, I'd like to give you a gift, here is
17 $500, is that considered a service, or is that considered a gift?"  In answering the question the
18 revenue agent compounded the prosecutor's error by answering the grand jury that, "I understand
19 it's confusing, but we're not looking from the donor's standpoint; we're looking from the
20 recipient's standpoint." *See* Second Notice of Lodgment of Exhibits Under Seal, Grand Jury
21 Transcript of McGuire at 11:18 - 12:16.  Earlier, the prosecutor asked the agent, "Does it matter
22 that the [church offering] plate was passed, for instance?"  The agent answered, "No."  The
23 prosecutor asked the agent, "Or how the money was collected that resulted in the fee being paid to
24 the visiting minister?"  The agent again answered, "No."  The prosecutor continued, "As long as

---

[2] In one of the two consolidated appeals, a taxpayer had been employed for 10 years by a New York City church. When the taxpayer resigned to start his own business, the church gave the taxpayer a "gratuity" of $20,000 in appreciation for the job he had performed. The taxpayer argued that it was a nontaxable gift, and sued for a refund. The district court agreed and construed the money received as a gift. The Court of Appeals disagreed. The Supreme Court reversed and remanded the case to the district court for more explicit findings in support of its "gift" determination.

1  the evidence shows either directly or circumstantially, that the money going to the visiting
2  minister, was [it] a fee for services?" The agent answered, "That's correct." *Id.* at 8:9-18. In
3  other words, the agent told the grand jury that donative intent was irrelevant. In contrast, the
4  Supreme Court calls a donor's intent *the most critical factor*. The grand jury was misled, as a
5  result, and their ability to carry out their task impartially was destroyed.
6      For example, another exchange went as follows:
7      GRAND JUROR:   WHAT IS THE DEFINITION OF A "LOVE GIFT," AND
8                    ISN'T THAT, IN FACT, NOT [SIC] NON-REPORTABLE
9                    IF IT IS LEGITIMATE?
10     PROSECUTOR:    WE'RE GOING TO HAVE THE REVENUE AGENT
11                   DISCUSS THAT ISSUE OF HONORARIUM AND GIVE
12                   YOU THE BACKGROUND AND REGULATIONS AND
13                   STATUTES.
14     GRAND JUROR:   ALL RIGHT.
15     PROSECUTOR:    FROM THE U.S. ATTORNEY'S PERSPECTIVE AND
16                   FROM THE GOVERNMENT'S PERSPECTIVE, THE
17                   THEORY IS THAT THESE FEES THAT ARE NOT
18                   REPORTED ARE FEES FOR SERVICES.  HE
19                   APPEARED, A PERSONAL APPEARANCE FEE, IT
20                   DOESN'T MATTER WHAT YOU CALL IT.  IF YOU
21                   WANT TO CALL IT A LOVE GIFT, YOU WANT TO
22                   CALL IT A LOVE GIFT, YOU WANT TO CALL IT A
23                   DONATION, A FEE, AN HONORARIUM, IT IS, IN
24                   FACT, A PAYMENT MADE BECAUSE OF SERVICES
25                   RENDERED.
26  Grand Jury Transcript of Toussaint at 38:17 - 39:6. The next exchange focused on the same
27  question and went as follows:
28     GRAND JUROR:   YOU SAID WE WERE GOING TO GET AN

| | | |
|---|---|---|
| 1 | | EXPLANATION BETWEEN HONORARIUM AND LOVE |
| 2 | | GIFTS. |
| 3 | PROSECUTOR: | CORRECT. |
| 4 | GRAND JUROR: | I'M CONFUSED IF THEY'RE THE SAME, AND YOU'RE |
| 5 | | SAYING THEY'RE THE SAME WHEN IT COMES TO |
| 6 | | INCOME, BASICALLY? |
| 7 | PROSECUTOR: | I'D RATHER YOU NOT RELY ON WHAT I HAVE TO |
| 8 | | SAY ABOUT IT.  I'D RATHER YOU RELY ON THE |
| 9 | | REVENUE AGENT. . . .WE'RE SAYING THAT IT |
| 10 | | DOESN'T MATTER WHAT YOU CALL IT; IT'S WHAT, |
| 11 | | IN FACT, THEY ARE.  AND THE GOVERNMENT'S |
| 12 | | POSITION IS, THESE MONEYS WERE RECEIVED BY |
| 13 | | MORRIS CERULLO BECAUSE HE PROVIDED A |
| 14 | | SERVICE.  HE WENT TO A LOCATION AND SPOKE. |
| 15 | | HE PROVIDED A SERVICE THAT MONEY WOULD |
| 16 | | NOT HAVE BEEN RECEIVED IF HE HAD NOT DONE |
| 17 | | THAT. . . . |

*Id.* at 47:6 - 19.  The grand jury kept pressing the prosecutor on how it was to evaluate the money Defendant received in terms of reportable earned income versus non-reportable gifts received. This exchange went as follows:

| | | |
|---|---|---|
| 21 | GRAND JUROR: | ONE OTHER QUESTION.  IF A GOOD MINISTER |
| 22 | | SOLICITS CONTRIBUTIONS, HOWEVER, THROUGH |
| 23 | | THE TELEVISION OR ON THE PHONE, AND HE |
| 24 | | RECEIVES THOSE, AS GIFTS FROM INDIVIDUALS OR |
| 25 | | A COUPLE OF PEOPLE OR WHATEVER, IS THAT A |
| 26 | | LOVE GIFT OR IS IT – |
| 27 | PROSECUTOR: | YEAH, I'M GONG TO LET THE REVENUE AGENT DEAL |
| 28 | | WITH THAT ONE.  BUT I'LL QUICKLY POINT OUT, THAT'S |

                    NOT WHAT WE'RE DEALING WITH HERE.  WE'RE TALKING
                    ABOUT MONEY RECEIVED FOR A FEE FOR SERVICES
                    PERFORMED.

*Id.* at 49:1 - 10.

      This Court is leery of imposing upon the Government a duty to accurately instruct the grand jury on every relevant legal issue in presenting a case for indictment.  Such an across-the-board rule would be as unworkable as it is unsupportable by legal precedent.  Nevertheless, in this case there is one crucial over-arching legal question, the answer to which came from the Supreme Court almost half a century ago – the legal tax question of how to distinguish between reportable income and a non-reportable gift.  Unfortunately, the prosecutor did not attempt to inform the grand jury of the Supreme Court's decision.  Whether a prosecutor would have such a duty absent a question from the grand jury, this Court need not decide.  Here, the prosecutor's duty to instruct correctly is plainly apparent.  The tax statute is silent.  The grand jury asked repeatedly how to distinguish a gift from earnings.  It was incumbent on the prosecutor to correctly inform the grand jury as to the Supreme Court's approach on this penultimate question.  Yet, the prosecutor and the revenue agent witnesses failed to tell the grand jury that the donor's intent is the most critical factor.  Their failure misled the grand jury and amounts to prosecutorial error.

      The prosecutorial error[3] prejudiced the Defendant in this case.  The money received by a clergyman from a church at which he delivers a sermon, could be adjudged to be either earned income or a gift.  The judgment of the grand jury would mean the Defendant would, or would not, face a criminal trial because of his own judgment that the money he received was a gift.  A grand jury might properly find probable cause to believe this Defendant committed the tax crime and issue an indictment.  But it cannot properly make that judgment when instructed by the prosecutor that the donor's intent does not matter.

      Moreover, the prosecutor was presenting his case in, and the grand jury was making judgments on, an area that is dangerously close to the wide freedoms protected by the First

---

[3] By use of the term "prosecutorial error" this Court casts no aspersions on the prosecutor and agents and finds no deliberate or malicious intent to mislead.

- 6 -       05cr1190

1  Amendment Free Exercise Clause.  The Free Exercise Clause prohibits the Government from
2  making and enforcing laws that abridge the free exercise of sincerely held religious beliefs.  There
3  is no argument that the Defendant in this case was engaged in anything other than communicating
4  his sincerely held religious beliefs to gatherings of religious worshippers at religious venues.  The
5  Defendant is not accused of earning income through a secular endeavor such as selling widgets or
6  providing expert accounting advice.  He was apparently engaged in the typical religious exercise
7  of speaking on religious topics to church gatherings.  It could be said that the Government wrongly
8  obtained the criminal indictment against this clergyman for exercising his First Amendment right,
9  by way of mis-describing to the grand jury that monetary gifts given were really payments of fees
10 for services rendered that should have been reported on income tax returns.  Of course, it could
11 also be said that the Government correctly sought the indictment simply because it had evidence
12 that the Defendant was cheating on his tax returns.
13       Nevertheless, this case illustrates the specter of a federal tax prosecution that faces every
14 clergyman, minister, rabbi, and cleric who receives money after delivering a sermon.  Such tax
15 cases must be considered by government prosecutors with great care lest the Government trench
16 on rights afforded by the Free Exercise Clause and convert that which is a guaranteed liberty into a
17 federal crime.  In this case, the prosecutor did not exercise that necessary care before the grand
18 jury.  Consequently, the grand jury was misled on the law, was unable to correctly adjudge the
19 evidence, and no longer operated as an independent body and buffer between the Government and
20 the Defendant.  As a direct result, the Defendant has suffered substantial prejudice.
21       Therefore, the indictment against Defendant Morris Cerullo is hereby dismissed.
22        IT IS SO ORDERED.
23
24 DATED: September 7, 2007
25
26                                                   Hon. Roger T. Benitez
                                                    United States District Judge
27
28